IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Lora J. Gischel, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:24-CV-4124 |
| | : | |
| v. | : | Judge Algenon L. Marbley |
| | : | |
| City of Reynoldsburg, Ohio, et al., | : | Magistrate Judge Kiberly A. Jolson |
| | : | |
| Defendants. | : | |

## SECOND AMENDED COMPLAINT
### (Jury Demand Endorsed Hereon)

## I.  Introduction

1.     This is an action brought pursuant to Federal and Ohio law, on behalf of Lora J. Gischel ("Ms. Gischel" or "Plaintiff"), an employee of the City of Reynoldsburg, alleging violations of 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, Ohio's antidiscrimination law, R.C. Chapter 4112, and the common law of the State of Ohio, against Defendants, City of Reynoldsburg, Ohio ("Defendant" or "City"), Stephen M. Cicak ("Defendant Cicak"), Reynoldsburg City Auditor, and various officials thereof, because as detailed herein, the Defendants: (a) attempted to remove Ms. Gischel from her position and engaged in other acts of retaliation for her exercise of her First and Fourteenth Amendment rights to speak out on matters of public concern, and to petition for the remission of public funds to local school districts which had been unlawfully withheld , after Ms. Gischel spoke out regarding the performance of partisan political activities on City time and the use of taxpayer-funded resources for partisan political activities; (b) deprived Ms. Gischel of due process of law by initiating her termination without providing a pre-removal hearing, reducing her in her position by improperly classifying her, removing

1

a significant portion of her job duties, and affirmatively misleading other City officials as to her job performance; (c) placed Ms. Gischel in a false light; and/or (d) orchestrated a campaign of harassment, including sex stereotypical comments, sabotage, sex differential treatment, and deviations from custom, such as adherence to civil service standards and inclusion in events, aimed at convincing her to resign.

## II. Jurisdiction and Venue

2.      This Court has jurisdiction over this action by virtue of 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights) and because it involves claims brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 2000e, pursuant to a charge affidavit dual filed with the Equal Employment Opportunity Commission and the Ohio Civil Rights Commission on April 16, 2024, alleging sex discrimination and retaliation, and an EEOC right-to-sue notice received within the past 90 days, and the Constitution of the United States

3.      Declaratory, equitable, and injunctive relief is sought pursuant to sought pursuant to 28 U.S.C. §§ 2201 and 2202.

4.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over claims brought pursuant to Ohio R.C. Chapter 4112 and the common law of the State of Ohio.

5.      Venue is proper under Fed. R. Civ. P. 3, 28 U.S.C. § 1391(b), and S.D. Civ. R. 82.1 as Defendants, City of Reynoldsburg, Ohio and Stephen Cicak, Reynoldsburg City Auditor, are entities or officials doing business within the City of Reynoldsburg, County of Franklin, State of Ohio, some or all of the individual defendants reside within the County of Franklin, State of Ohio, and all are doing or have done business therein, and the unlawful and/or torts complained of herein were committed within the County of Franklin, State of Ohio.

## III. Parties

6.  Ms. Gischel is a female and a citizen of the United States and a resident of Franklin County, State of Ohio, and is an employee as defined in 42 U.S.C. §§ 2000e(f) and 4112.01(A)(3) at all times material herein.

7.  Defendant City of Reynoldsburg is a political subdivision of the State of Ohio pursuant to R.C. Chapter 2744 and is an "employer" under 42 U.S.C. § 2000e(b) and R.C. 4112.01(A)(2).

8.  Defendant Stephen M. Cicak, Reynoldsburg City Auditor, is a "person" under 42 U.S.C. § 1983 and an "employer" under 42 U.S.C. § 2000e(b) and R.C. 4112.01(A)(2) and acted under color of law; however, he is not sued under 42 U.S.C. § 1983 or 42 U.S.C. § 2000e in his individual capacity; he is a city auditor statutorily charged with the duties of keeping the books of the city and exhibiting accurate statements of all moneys received and expended, of all property owned by the city and the income derived therefrom, and of all taxes and assessments. R.C. 733.11; City Charter Sec. 6.02(d). He established employment policies for the Reynoldsburg City Auditor's Office at all times material herein and, on behalf of Defendant City of Reynoldsburg, implemented its employment policies for the Auditor's Office; he decided to constructively terminate Plaintiff after she expressed her opinion on matters of public concern.

## IV. Claims/Causes of Action

### FACTUAL BACKGROUND

9.  Ms. Gischel realleges the foregoing paragraphs as if fully rewritten herein.

10. Ms. Gischel has been employed by the City of Reynoldsburg since May 10, 2021, when she was appointed to the civil service position, City Income Tax Administrator, in which she

is still classified; City Income Tax Administrator is a position within the classified civil service of the City of Reynoldsburg pursuant to Section 6.02 of the Charter of the City of Reynoldsburg.

11. Defendant, the City of Reynoldsburg, Ohio (hereinafter, "the City"), is a municipal corporation and a political subdivision within the State of Ohio, which employs Ms. Gischel and all of the individual defendants. The City is governed by a City Charter, duly approved by the City's voters and effective June 5, 1979, as well as by the constitution and laws of the State of Ohio and duly adopted City ordinances.

12. The City Auditor is the chief fiscal officer of the City of Reynoldsburg and is required to perform the powers, duties and functions now or hereafter given to City Auditors and Treasurers under the general laws of Ohio to the extent those laws are not in conflict with the Charter of the City of Reynoldsburg.

13. The City Auditor is the appointing authority for his department with the power to appoint, promote, remove, suspend or otherwise discipline officers and employees within his department and office subject to the provisions of Section 7.03 of the Reynoldsburg City Charter.

14. Defendant Cicak was the City Auditor when Ms. Gischel became employed; he was re-elected to a four-year term in November 2021.

15. When Ms. Gischel began employment with the City in May 2021, she was assigned duties related to payroll and bank reconciliations.

16. As of May 10, 2021, Ms. Gischel's duties as Tax Administrator also included, but were not limited to, the following actual duties performed: direct and manage the functions, operations, activities, and resources of the Department of Taxation; serve as the designated

4

subject matter expert on city income tax for the City, Regional Income Tax Agency (RITA), Etna- Reynoldsburg Joint Economic Development Districts (JEDDs), and the State of Ohio; interpret, administer, and enforce City Tax Ordinances, City Tax Agreement/Contracts (JEDD, Enterprise Zone, etc.), Federal Tax Code and the /Ohio Revised Code; Manage third-party service contracts and agreements effectively (i.e., RITA, JEDDs, and other city agreements); establish policy, procedures and regulations for the income tax department and the JEDDs; Monitor legislative developments; monitor, research, and analyze and present tax data; draft legislation and attend council meetings; provide leadership, direction, and/or guidance to the public, elected officials and/or team members on the City's tax requirements, revenue, expenses, and budgets; maintain and secure tax records confidentially; prepare/audit municipal tax reports and forms for the city and JEDDs; resolve various tax discrepancies, disputes and questions; final authority on penalty/interest abatements; reach final tax case determination and present City's position to the Tax Board of Review; audit/reconcile tax receipts received from RITA and the State of Ohio; communicate and collaborate regularly with RITA on tax accounts, revenue, and services; establish policies, procedures, and reporting, and then direct collection of income tax, policies, procedures, reporting, distribution and closure for any designated, specialized tax districts/zones as contractually obligated by the city (i.e. JEDDs, E-Zones); coordinate any Board of Review and/or legal action with appropriate parties and represent the City as necessary; prepare reports to summarize and forecast tax receipts; develop and prepare Tax Department's annual budget; monitor and manage Department's operating expenditures; balance city and JEDD tax revenue with the General Ledger; certify the City and Joint Economic Development District (1-4 & 7) municipal income tax rates with the State of

Ohio; certify the City and JEDD income tax collections, by account type (individual, withholding, and net profit), with the State of Ohio; present quarterly to the Board of Trustees the tax receipts; prepare data and actively participate in legislative process, and influence state policy regarding municipal income tax; assist in the development and review of tax and financial reports, including footnotes and disclosures, ensuring compliance with financial best practices and guidelines specific to government entities; provide support throughout the audit process as needed; responsible for all Purchase Orders and payments for Tax Department; maintain records according to public record retention laws; prepare quarterly and annual payroll reports (i.e., 941, state, local reporting); serve as back up to payroll processing, as necessary; assist with W-2 and 1099 Forms; reconcile and audit daily receipts; assist Finance Manager with monthly/year end closing process as needed (i.e., bank/revenue reconciliations, accounting entries, statistical reports, annual audit); maintain the City's real estate tax records and apply for exemptions; establish new bank accounts for utility payments; attend professional and tax organization meetings and training; complete continuing education requirements in accordance with Ohio Revised Code; and General Office Duties (i.e., correspondence; filing; customer service).

17.  During September 2021, Defendant Cicak told Ms. Gischel that he had prepared a request for a wage increase for her, however, he did not immediately follow through on this commitment. Subsequently, the increase was not issued until November 2021.

18.  Effective November 2021, and thereafter to the present, Ms. Gischel's duties as Tax Administrator and/or Tax Financial Manager included all of the aforementioned duties listed above in paragraph 16, and during this time period also included, but was not limited to, the following additional duties: represent City on all JED District Boards; serve as

6

Treasurer and Secretary to these boards; act as Fiscal Officer/Treasurer to the JEDD Boards (1-4 & 7); responsible for all financial activities of the District, including but not limited to preparing annual budgets, appropriations, generating fiscal reports, managing expenses, receiving and safeguarding funds, overseeing investments, and maintaining accurate records of all receipts and expenditures; present quarterly to the Board of Trustees the distributions, expenses, appropriations, and the budget (annually); reconcile monthly JEDD bank statements (ten accounts) and financial statements; serve as primary contact; serve as Secretary to the five JEDD boards; maintain records, correspondence and board minutes until the end of 2024, provide written notice as required by law of all meetings, and assist with public record requests.

19.    On or about July 12, 2022, Mr. Cicak proposed changes in the position description for Auditor Secretary Carrie Schele and additional staff for the Finance department in the Auditor's  Office, via an email to Sandra Boller, wherein he stated: "…Joni has the additions and minor changes for this job description and will work with you to hire an additional full time finance staff associate in 2023."

20.    Subsequently, in September 2022, and continuing thereafter, Mr. Cicak proposed changes in Ms. Gischel's duties without notice to Ms. Gischel and without her consent.

21.    On or about September 30, 2022, Ms. Gischel reported what she reasonably believed to be "unethical behavior by an elected official" on the part of Auditor Cicak.

22.    When Ms. Gischel, a public employee, reported such unethical behavior she also engaged in free expression as a citizen on a matter of public concern.

23. When Ms. Gischel reported such unethical behavior, her speech was protected under the First Amendment of the Constitution of the United States and Article I, Section 11 of the Constitution of the State of Ohio.

24. When Ms. Gischel reported such unethical behavior the interest of Defendants, as her employer in promoting the efficiency of the municipal services it performs through its employees did not outweigh the interests of Ms. Gischel, as a citizen, in commenting upon matters of public concern.

25. On or about October 6, 2022, Mr. Cicak, without notice to and without the knowledge of Ms. Gischel, attempted to remove her from her classified civil service employment without cause by directing Human Resources Director Sandra Boller to "…terminate the employment of Lori Gischel effective today…[and] have Lori met, advised and escorted from the building with her personal property upon her arrival… [and deprived of access to] RITA systems in the name of the City."

26. Upon her arrival the morning of October 6, 2022, Ms. Gischel noticed two police officers exit the police building and follow her into City Hall, using their key cards to access the audit department—not through personnel authorization, which was unusual. They wandered the bullpen area without speaking to her. Even though her typical arrival time then was around 7:30 a.m., they appeared surprised to find her there alone. They claimed to be seeking the auditor and finance manager regarding IRAs. This was suspicious, as the auditor's typical daily arrival was between 9:00 and 9:15 a.m., and his vehicle was absent from his designated parking spot (i.e., facing the police building).

27. Subsequently, the morning of October 6, 2022, the auditor's staff, with the exception of Ms. Gischel, were informed by Ms. Crawford that Ms. Gischel was being terminated. Later

that morning, Ms. Gischel learned of Defendant Cicak's attempt to remove her from her employment from Mayor Begeny. Mayor Begeny shared with Ms. Gischel that he, HR, and the City Attorney did not, and could not, support removing her because they felt there was no cause, no due process, and her work at the City was valued. Further Mayor Begeny suggested that Ms. Gischel seek legal counsel.

28. On or about November 3, 2022, Ms. Gischel and her legal counsel learned of Defendant Cicak's attempt to remove her from her employment as set forth above in Paragraph 25 through receipt of public records.

29. During November of 2022, Mr. Cicak proposed further changes in Plaintiff's duties.

30. On or about November 28, 2022, Human Resources Director Sandra Boller sent a memorandum to Mr. Cicak indicating that "…in reviewing the Tax Administrator job description information…and the general tax administrator duties along with the other duties that have been added to this position, it does have merit to increase the grade of the position to a recommended 19."

31. Subsequently, in January 2023, Mr. Cicak planned further changes to Ms. Gischel's job description.

32. On or about February and/or March 2023, Mr. Cicak attempted to remove significant duties from Ms. Gischel, which she had been performing, through pitches to the Mayor and Human Resources Administrator Sandra Boller without notice to or consent by Ms. Gischel.

33. On or about April 24, 2023, Auditor Cicak indicated in an email that several significant duties performed by Ms. Gischel would be transferred to Keonna White without notice to or consent of Ms. Gischel.

34. The reassignment of Ms. Gischel's duties constituted a reduction in her duties.

35. Ms. Gischel has never been disciplined or counseled for her conduct or performance during her employment with the City.

36. In 2021 and 2022, Ms. Gischel was awarded performance-based salary increases.

37. Ms. Gischel has achieved certificates for continuing education in government accounting, budgeting and financing, financial report preparation, cybersecurity, investments, and ethics, as required for local government treasurers by the Ohio Auditor of State under R.C. Sec. 733.81. Ms. Gischel holds a master's degree in business from The Ohio State University and most recently attained a State of Ohio Treasure License.

38. Ms. Gischel is currently paid at the hourly rate of $52.10, for an annual salary of $108,368.00.

39. Ms. Gischel's compensation is below salary and pay ranges for similar, comparable classifications ranges for similar positions in other public agencies in the Central Ohio area, such as the City of Dublin and the City of Westerville, as well as "like" or comparable municipalities throughout the State, when her duties, education and experience are considered.

40. As a direct and proximate cause of Defendants' continuing unlawful actions, Ms. Gischel has suffered damages, including but not limited to: Missed Loss of wages; Loss of pension benefits; Loss of insurance benefits; Loss of other fringe benefits; Loss of the opportunity to be able to continue the gainful employ in which she was engaged for the prior years; Loss of future earnings and front-pay; Loss of reputation; Humiliation, embarrassment, and loss of self-esteem; Adverse health effects; Unequal pay on the basis of her gender; and Loss of time and money in endeavoring to protect herself from Defendants' continuing unlawful retaliation, including costs and reasonable attorneys' fees of this action.

## <u>Count I</u>
## <u>42 U.S.C. § 1983</u>
## <u>Violation of the First and Fourteenth Amendments</u>

**A.    Unlawful retaliation for protected speech and petition for the redress of grievances in violation of the First and Fourteenth Amendments to the Constitution of the United States.**

41.    The allegations of the foregoing paragraphs are incorporated by reference as if fully restated herein.

42.    This claim is brought pursuant to <u>42 U.S.C. § 1983</u> and the First and Fourteenth Amendments to the Constitution of the United States.

43.    During her employment, Ms. Gischel reasonably believed and complained that Defendant Cicak improperly and unlawfully engaged in the performance of partisan political activities while working for the City and using City resources; that he further authorized his subordinate employees to engage in partisan political activities in support of his November 2021 reelection campaign; and that he attempted to conceal those partisan political campaign activities that he performed individually while at work.

44.    During her employment, Ms. Gischel reasonably believed and further complained that Defendant Cicak improperly and unlawfully failed to administer multiple Joint Economic Development District ("JEDD") agreements between Defendant City and other government entities, including failing to remit money owed, failing to collect money due to the City, requiring Ms. Gischel to disclose confidential tax return information of contractors and employees, incorrectly reporting and overstating JEDD collection amounts, and redirecting fault for these alleged failures to other individuals; and that Defendant, as the ultimate authority responsible for signing off on distributions under these JEDD agreements, was derelict in his duties under the law.

45. Defendant Cicak retaliated against Ms. Gischel, initially, by directing her removal and failing to provide her with the required due process for terminating a civil service employee; after his efforts to terminate Ms. Gischel failed, Defendant Cicak physically and psychologically tried to intimidate Ms. Gischel by arriving 1 ½ hours early to work so she would be alone with him in the office, making sure she was constantly monitored (whereabouts and work product) he withheld privileges from Ms. Gischel, alienated her, tried to find fault and criticize Ms. Gischel in front of peers, elected officials, and the general public; Defendant Cicak undermined Ms. Gischel's ability to perform her job, damaged her reputation, and retaliated against her by demanding her discipline and/or termination following the commencement of an unwarranted and unnecessary investigation.

46. Ms. Gischel's communications with the State Auditor, the Ohio Ethics Commission, the Reynoldsburg City Council, the Reynoldsburg Human Resources Director, Sandra Boller, and the Reynoldsburg Civil Service Commission regarding the aforementioned allegations of improper and unlawful acts and omissions, constituted non-disruptive speech and/or communications on matters of public concern protected by the First Amendment to the Constitution of the United States.

47. As described above, the Defendants, City of Reynoldsburg, and Cicak, retaliated against Ms. Gischel for said protected speech and/or communications, access and petition, by denying her equal pay, reducing her duties, criticizing her performance, making disparaging comments about her competence and character, and attempting to remove her from her position. Further, the Defendants, did not retaliate against her male counterpart, Mr. Jason Ward when he raised issues of potential unethical acts and fraud.

48.    After Cicak's October 6, 2022, attempted removal from Ms. Gischel's employment without cause, he commenced to remove duties from her position and, thus, reduce her employment interest. Via secret communications with the Mayor and Human Resources Administrator Sandra Boller during November of 2022 and without notice to or consent by Ms. Gischel, Cicak proposed further changes in Ms. Gischel's position to eliminate significant portions of her duties in February and/or March 2023, including, but not limited to, rescission of Ms. Gischel's appointments to the aforementioned JEDD Boards. Said changes transferred several of Ms. Gischel's duties to another employee, Keonna White, on April 24, 2023, without notice to or consent of Ms. Gischel.

49.    Auditor Cicak advocated against the proper reclassification of Ms. Gischel's position, as ordered by the Reynoldsburg Civil Service Commission, and the salary increases which would logically flow from such reclassification. The City Council eventually reclassified the "Income Tax Administrator" position from a Frage 17 to Grade 20 and changed the title to "Tax Financial Manager." Defendant Cicak would not support a pay increase. When HR pushed the issue, Defendant Cicak authorized a $1 increase in pay. These adverse acts committed by Defendant Cicak and acquiesced in by Defendant City of Reynoldsburg or agents thereof, extended over a period of time and, because they involve an interlinked succession of related events, and, hence, a continuing fully-integrated course of retaliatory conduct, intended to deprive of her property interest in her employment.

50.    The aforementioned retaliatory actions constitute a deprivation of a property interest in that Defendants have precluded Plaintiff from the salary increase to which she is entitled based on the order of reclassification, and, thus, deprived her of a pecuniary loss in the form of lost earnings, missed wages, and retirement contributions.

51.     Said actions were sufficient to deter a person of ordinary firmness from the exercise of his or her First Amendment rights.

52.     The Defendants, the City of Reynoldsburg, and Cicak, acted with malice and ill will towards Ms. Gischel, and without regard for her legal rights. The Defendants acted pursuant to certain customs and policies of the City of Reynoldsburg that employees who exercised their First Amendment rights to criticize and/or embarrass the City administration and/or City officials would suffer retaliation.

53.     As a direct and proximate result of the wrongful actions of the Defendants that have occurred since the settlement of the first federal action, as set forth above, Ms. Gischel has suffered loss of pay and benefits appertaining to her position as Income Tax Administrator for the City's Income Tax Department (under the Auditor's Office), loss of reputation, humiliation, embarrassment, loss of self-esteem, adverse health effects, loss of time and money, and the expenditure of attorney fees and costs in endeavoring to protect herself from Defendants' unlawful retaliation, including but not limited to attorney fees and costs expended in her appeal to the Commission, and the costs and reasonable attorney fees of this action as well as all other remedies to which Ms. Gischel is entitled by law.

**B.      Deprivation of due process rights to pre-deprivation notice and opportunity to respond in violation of the Due Process Clause of the Fourteenth Amendment.**

54.     The allegations of the foregoing paragraphs are incorporated by reference as if fully restated herein.

55.     This claim is brought pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendments to the Constitution of the United States.

56.     Ms. Gischel had a property right in her employment not to be suspended, reduced in pay or position, or discharged, except for the reasons stated in R.C. 124.34.

14

57.     The Due Process Clause of the Fourteenth Amendment to the Constitution of the United States entitled Ms. Gischel to notice of the charges against her and a meaningful opportunity to respond that was not a sham, prior to her discharge from or discipline during employment.

58.     Ms. Gischel was never provided notice of the charges or, even written knowledge of Defendant Cicak's attempted termination of her employment and/or an opportunity to respond, until November 3, 2022, when her attorney obtained public records pursuant to a request under R.C. 149.43.

59.     The Defendants, the City of Reynoldsburg, and Stephen M. Cicak, acted with malice and ill will towards Ms. Gischel, and without regard for her legal rights. The Defendants acted pursuant to certain customs and policies of the City of Reynoldsburg.

60.     As a direct and proximate result of the wrongful actions of the Defendants that have occurred since on or about October 6, 2022, as set forth above, Ms. Gischel has suffered loss of pay and benefits appertaining to her position as Income Tax Administrator for the City Auditor's Office, loss of reputation, humiliation, embarrassment, loss of self-esteem, adverse health effects, loss of time and money, and the expenditure of attorney fees and costs in endeavoring to protect herself from Defendants' deprivations of her due process rights, including but not limited to attorney fees and costs expended in her appeal to the Commission, and the costs and reasonable attorney fees of this action as well as all other remedies to which Ms. Gischel is entitled by law.

61.     Defendants' conduct in an ongoing violation of the First and Fourteenth Amendments of the Constitution, and Ms. Gischel is entitled to judgment pursuant to 42 U.S.C. § 1983.

**Count II**
**Ohio Common Law**
**Placement in False Light**

62. The allegations of the foregoing paragraphs are incorporated by reference as if fully restated herein.

63. This claim is brought pursuant to the common law of the State of Ohio.

64. The Defendants, City of Reynoldsburg, Cicak and/or their agents, owed Ms. Gischel a duty of care to avoid injury to her reputation and/or property interest and to refrain from invading her privacy.

65. Defendant Cicak made numerous statements to other elected officials of the City, other employees and staff members of the City of Reynoldsburg, and private citizens, indicating that Ms. Gischel's job performance was deficient, and that her criticisms of Defendant Cicak were unfounded in that they mischaracterized his performance and authority in regards to his administration of his duties and his interaction with citizens of Reynoldsburg. Defendant Cicak stated to several City officials and employees and private citizens, as well, that Ms. Gischel should be terminated from her employment for many reasons, both professional and interpersonal. These statements by Defendant Cicak impugning her performance and character were so frequent and extensive that reports of these statements to City officials and members of the public were made back to Ms. Gischel, as Cicak became increasingly agitated that he was unsuccessful in effectuating her termination.

66. The statements by Defendants, City of Reynoldsburg, Cicak and/or their agents, made as a result of Ms. Gischel's complaints of wrongdoing and assertion of her legal rights to nondiscriminatory treatment, pay and working environment, indicated and/or implied that

Ms. Gischel's job performance was deficient, and that she was simply emotional, aggressive, or a "hysterical woman."

67. Such statements were known by Defendants to be false or defamatory, and/or were made in reckless disregard of their truth or falsity, at the time the statements were made. Such statements placed Ms. Gischel in a false light or position so as to justify her in the eyes of the community in feeling seriously offended and aggrieved as a result of such false and defamatory statements.

68. As a direct and proximate result of these wrongful actions of the Defendants, City of Reynoldsburg, Cicak, Defendants' agents, Begeny and Shook, Ms. Gischel has suffered loss of reputation, humiliation, embarrassment, loss of self-esteem, adverse health effects, loss of time and money, and the expenditure of attorney fees and costs in endeavoring to protect himself from Defendants' deprivations of her due process rights, including but not limited to attorney fees and costs expended in her appeal to the Commission, and the costs and reasonable attorney fees of this action as well as all other remedies to which Ms. Gischel is entitled by law.

### Count III
### Violations of Federal and Ohio Employment Discrimination Statutes

69. The allegations of the foregoing paragraphs are incorporated by reference as if fully restated herein.

70. What began as a professional working relationship with the Auditor started to deteriorate when Ms. Gischel questioned some of his decisions and actions and constructively suggested long overdue changes.

71. Ms. Gischel performed her job duties in exemplary fashion and never gave the Auditor sufficient grounds to terminate her from her civil service position.

17

72. The Auditor then embarked on a campaign of harassment to get her to resign.

73. In that campaign the Auditor uttered and/or tolerated demeaning comments about women that doubted their ability to serve in high-level positions and connected their inability to serve with stereotypes about women.

74. The Auditor essentially characterized professional responses from Ms. Gischel as hysterical reactions of the sort caused by hormonal imbalance.

75. The Auditor gave the impression that women who were his subordinates should keep quiet, rather than criticize, and know their place as a subordinate, rather than challenge him.

76. The Auditor's words and actions employee inflicted a double standard on Ms. Gischel: male employees and female employees who fit his sexist view of how professional women should act were treated more favorably, given regular pay raises, included in social and team events, supervised without micromanagement, given stable assignments and responsibilities, and facilitated in their job performance.

77. The Auditor often blocked steps that Ms. Gischel wanted to take even though the steps would have improved efficiency and effectiveness, and he would have deferred to male employees or female employees who fit his sexist view of how professional women should act.

78. The Auditor sabotaged Ms. Gischel in several ways, including stripping her of responsibilities that her position naturally had, forbidding her to assist with tax preparation at the senior center, refusing to allow her to do a tax segment on the Nepali podcast, blocking the use of the Attorney General's compliance program, adding duties that others should have performed, removing board appointments that customarily are made for her position, seeking to discharge her, and reclassifying her job position, while he did not

sabotage male employees or female employees who fits his sexist view of how professional women should act but rather promoted and rewarded them.

79. The Auditor's campaign included preventing implementation of Civil Service recommendations for Ms. Gischel – changing her job title, raising her pay range, increasing her pay within that range, and doing all retroactively – that he would have implemented had they involved male employees or female employees who fit his sexist view of how professional women should act. In fact, he simultaneously argued with human resources and civil service to promote and increase the hourly rate of another female employee that fit his sexist view.

80. Especially intolerable for Ms. Gischel was the way others were affected by the Auditor's notorious campaign of harassment: they ostracized her and/or stopped treating her professionally. If others tried to assist Ms. Gischel, he retaliated against them as well (Ms. Boller and Civil Service staff).

81. Ms. Gischel had a sincerely held belief, one reasonable under the circumstances, that the Auditor's actions and decisions were discriminatory and retaliatory.

82. Ms. Gischel made her belief known to the Auditor and others in City government.

83. The Auditor's actions and decisions were sufficient to deter a person of ordinary firmness from the exercise of his or her statutory rights.

84. No prompt and effective remedy was made to mitigate or stop the hostile environment the Auditor inflicted on Ms. Gischel.

85. The Defendants, the City of Reynoldsburg, and Cicak, acted with malice and ill will towards Ms. Gischel and/or with conscious disregard for her legal rights and discriminated and retaliated against Ms. Gischel in violation of 42 U.S.C. § 2000e-2(a)(1) and/or sex was

a motivating factor in Defendants' discrimination and retaliation against Ms. Gischel in violation of 42 U.S.C. § 2000e-2(m).

86. As a direct and proximate result of the wrongful actions and decisions of the Defendants, as set forth above, Ms. Gischel has suffered loss of pay and benefits appertaining to her position as Income Tax Administrator for the City's Income Tax Department, loss of reputation, humiliation, embarrassment, loss of self-esteem, adverse health effects, loss of time and money, and the expenditure of attorney fees and costs in endeavoring to protect herself from Defendants' unlawful discrimination and retaliation, including but not limited to attorney fees and costs expended in her appeal to the Commission, and the costs and reasonable attorney fees of this action as well as all other remedies to which Ms. Gischel is entitled by law.

### V. Prayer for Relief

**WHEREFORE**, Plaintiff Lora J. Gischel respectfully prays that this Court:

A. Issue a declaratory judgment that the acts, conduct and practices of Defendants complained of herein violated the rights of Ms. Gischel under 42 U.S.C. § 1983, Title VII, the Ohio Laws Against Discrimination, and/or the common law of the State of Ohio;

B. Order Defendants to make Ms. Gischel whole by increasing her salary to market based on the duties and responsibilities performed with appropriate cost of living, and raise increases, providing restoration of back pay with full benefits, including missed wages, and reimbursement for lost pension and other benefits and expenses, as described herein, in an amount to be shown at trial.

C. Award Ms. Gischel punitive and compensatory damages, including but not limited to her legal expenses in contesting her reclassification, her reduction in duties by the Defendants,

City of Reynoldsburg, Stephen M. Cicak, Reynoldsburg City Auditor and/or his agents, and damage to her reputation, loss of self-esteem, adverse health effects, and the current litigation in an amount to be shown at trial;

D. Grant to Ms. Gischel her attorneys' fees, costs and expenses of this litigation, including but not limited to pre-and post-judgment interest and all pre-litigation work and efforts; and

E. Grant Ms. Gischel such further and additional relief to which Ms. Gischel may be entitled in law or equity.

<div style="margin-left:40%">

Respectfully Submitted,

*s/John S. Marshall*
John S. Marshall (0015160)
Marshall Forman & Schlein
250 Civic Center Drive, Suite 480
Columbus, Ohio 43215
Telephone: (614) 463-9790
Facsimile: (614) 463-9780
Email: jmarshall@marshallforman.com
*Trial Attorney for Lora J. Gischel*

*s/Laren E. Knoll*
Laren E. Knoll (0070594)
The Knoll Law Firm LLC
7240 Muirfield Drive, Suite 120
Dublin, Ohio 43017
Telephone: (614) 372-8890
Facsimile: (614) 452-4850
Email: lknoll@knolllaw.com
Co-Counsel for Lora J. Gischel

</div>

21

**JURY DEMAND**

Plaintiff Lora J. Gischel requests a trial by a jury on all issues set forth herein.

Respectfully Submitted,

*s/John S. Marshall*
John S. Marshall (0015160)
Marshall Forman & Schlein
*Trial Attorney for Lora J. Gischel*


**CERTIFICATE OF SERVICE**

This will certify that the foregoing was filed electronically on this 23rd day of May 2025.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

Respectfully Submitted,

*s/John S. Marshall*
John S. Marshall (0015160)
Marshall Forman & Schlein
*Trial Attorney for Lora J. Gischel*